FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2018 SEP 18  PM 1: 28

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES OF AMERICA,  )
                                  )
        Plaintiff,  )
                                    )
v.  )  Civil No. 6:18-CV-1544-0R1-40GJK
                                    )
LAKEESHA TUCKER; LAKEESHA TUCKER  )
LLC; and SIMPLIFIED FINANCIAL  )
SERVICES, LLC,  )
                                    )
        Defendants.  )

## COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF

The United States of America, for its complaint against Lakeesha Tucker, Lakeesha

Tucker, LLC, and Simplified Financial Services, LLC, alleges the following:

1.    This is a civil action brought by the United States under 26 U.S.C. §§ 7402, 7407,

and 7408 to enjoin Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services,

LLC, and anyone in active concert or participation with them, from:

    a.  acting as federal tax return preparers or requesting, assisting in, or
        directing the preparation or filing of federal tax returns, amended
        returns, or other related documents or forms for any person or entity
        other than themselves;

    b.  preparing or assisting in preparing federal tax returns that they know
        or reasonably should know would result in an understatement of tax
        liability or the overstatement of federal tax refund(s) as penalized by
        26 U.S.C. § 6694;

    c.  owning, operating, managing, working in, investing in, providing
        capital or loans to, receiving fees or remuneration from, controlling,
        licensing, consulting with, or franchising a tax return preparation
        business;

    d.  training, instructing, teaching, and creating or providing cheat sheets,
        memoranda, directions, instructions, or manuals, pertaining to the
        preparation of federal tax returns;

    e. maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

    f. engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code; and

    g. engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

This action also seeks, under 26 U.S.C. § 7402, an order requiring Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC, to disgorge to the United States the gross receipts that Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC, received (in the form of tax preparation fees) for the preparation of federal tax returns.

## Authorization

2.     This action has been requested and authorized by the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury, and commenced at the direction of a delegate of the Attorney General of the United States, pursuant to 26 U.S.C. §§ 7402, 7407, and 7408.

## Jurisdiction and Venue

3.     Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. § 7402(a).

4.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the activities giving rise to this suit occurred in this judicial district.

## Defendants

5.     Lakeesha Tucker resides in Atlanta, Georgia.  Tucker has been preparing tax returns for compensation since at least 2012.

2

6.     On or about May 22, 2012, Tucker incorporated Lakeesha Tucker, LLC, in Florida. According to Florida Secretary of State records, Tucker is the sole owner of Lakeesha Tucker, LLC and serves as its registered agent.

7.     On or about November 12, 2013, Jean Demesmin incorporated Simplified Financial Services, LLC, in Florida. The Articles of Incorporation identified Demesmin as the registered agent and were signed by Demesmin as a member of Simplified Financial Services, LLC. On or about November 25, 2013, Tucker filed Articles of Amendment, identifying Tucker as the registered agent of Simplified Financial Services, LLC. The Articles of Amendment were signed by Tucker as a member of Simplified Financial Services, LLC. Demesmin's name did not appear on the Articles of Amendment. According to Florida Secretary of State records, Tucker is currently the sole member of Simplified Financial Services, LLC and serves as its registered agent.

8.     Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC operate tax preparation stores in Orlando and Kissimmee, Florida and Moss Point, Mississippi under the name Simplified Financial Services.

9.     Tucker prepares tax returns for compensation. In addition to personally preparing tax returns for compensation, Tucker, as the owner of Lakeesha Tucker, LLC and Simplified Financial Services, LLC, employs individuals, directly or through Lakeesha Tucker, LLC and/or Simplified Financial Services, LLC, who prepare tax returns for compensation.

### Background

10.     LBS Tax Services ("LBS") began in 2008 as a tax return preparation business in Orlando, Florida operated by Walner Gachette. In 2011, Gachette began franchising the LBS name through Loan Buy Sell, Inc., a corporation organized in the State of Florida, to his

employees in order to broaden his revenue base.  On November 16, 2016, the United States District Court for the Middle District of Florida enjoined Gachette from preparing federal tax returns and owning, operating, and franchising a tax preparation business, and ordered him to disgorge his ill-gotten gains. *See United States v. Walner Gachette*, 6:14-cv-1539 (M.D. Fla.).

11.     Tucker began working at LBS in 2011.  In 2012, Tucker worked as a District Sales Manager ("DSM") at LBS, which entailed preparing tax returns and managing a tax preparation store owned by Jean Demesmin and located in Winter Park, Florida.

12.     In 2013, with a financial loan from Demesmin, Tucker became the owner of a tax preparation store in St. Petersburg, Florida.

13.     The United States filed suit against Demesmin on September 23, 2014. *See United States v. Demesmin, et al.*, 6:14-cv-1537 (M.D. Fla.)  On December 11, 2015, pursuant to a stipulation between the parties, this Court entered a preliminary injunction against Demesmin, barring him from preparing tax returns and owning and operating a tax preparation business. On September 7, 2016, the Court entered a permanent injunction and a judgment of disgorgement against Demesmin.

14.     While working at Demesmin's LBS tax preparation store, Tucker learned how to prepare tax returns in an improper manner to generate bogus refunds (such as by preparing tax returns making false claims on Forms Schedule A and C and claiming falsely inflated or fabricated Earned Income Tax Credits) and how to solicit business at large, retail business centers, such as Wal-Mart, and private locations, such as apartment complexes.  Following her employment at LBS, Tucker has continued to prepare tax returns, and trained and instructed tax return preparers that she, Lakeesha Tucker, LLC, and/or Simplified Financial Services, LLC employ to prepare tax returns, in this improper manner.

4

15.     From 2014 to the present, Tucker, individually or through Lakeesha Tucker, LLC

and Simplified Financial Services, LLC, has owned tax preparation stores at locations in 10 cities

in Florida, Mississippi, North Carolina, and Tennessee. Tucker owned and operated 7 tax

preparation stores in 2014 (in Orlando, Ocoee, Jacksonville, Pensacola, and St. Petersburg,

Florida; Dyersburg, Tennessee; and Charlotte, North Carolina); 5 tax preparation stores in 2015

(in Orlando, Jacksonville, Pensacola, and St. Petersburg, Florida; and Moss Point, Mississippi); 7

tax preparation stores in 2016 (in Orlando, Jacksonville, Pensacola, St. Petersburg, Apopka, and

Kissimmee, Florida; and Moss Point, Mississippi); 4 tax preparation stores in 2017 (in Orlando,

Pensacola, and Kissimmee, Florida; and Moss Point, Mississippi); and 3 tax preparation stores in

2018 (in Orlando and Kissimmee, Florida; and Moss Point, Mississippi). Tucker hires, trains,

and instructs the tax return preparers working at these stores. Tucker oversees the preparation of

tax returns at these stores. Tucker uses a computer software program that enables her to

remotely log in to the computers at each store and monitor or view (from any location with

internet access where Tucker may be located) the information reflected on the computer screen at

the store and communicate in real time with the tax return preparer using that computer to

prepare tax returns.

16.     According to IRS records showing tax returns filed identifying the Employer

Identification Number assigned to Simplified Financial Services, LLC, Simplified Financial

Services, LLC stores filed at least 1,241 tax returns in 2014, 975 tax returns in 2015, 1,556 tax

returns in 2016, 942 tax returns in 2017, and 398 tax returns in 2018.

17.     A tax return preparer, as defined 26 U.S.C. § 7701(a)(36), includes not only the

individual who physically prepares a tax return for compensation, but also anyone "who employs

one or more persons" to prepare tax returns for compensation. In addition to owning and

operating tax preparation stores since November 2013 (directly or through her wholly-owned entities), Tucker personally prepared tax returns.

18.     Because Tucker and her employees often do not properly identify themselves as the paid preparer on the tax returns that they prepare, it is difficult to determine the precise total number of tax returns that Tucker personally prepared.

## The Defendants' Activities

19.     The Defendants prepare tax returns to generate bogus refunds for customers, enabling the Defendants to charge exorbitant fees and maximize profits at the expense of the United States Treasury.

20.     Many of the Defendants' customers earn low to moderate incomes and lack knowledge regarding tax law and tax return preparation. Customers often have no knowledge that the Defendants have prepared and filed false tax returns on their behalf. For others, the Defendants mislead customers about what can "legally" be claimed on their tax returns, particularly with respect to various credits and deductions, and by promising customers thousands of dollars of (illegal) refunds to convince them to have the Defendants prepare their tax returns.

21.     The Defendants make false claims on tax returns, particularly on the forms attached to those returns, in order to improperly increase customers' refunds. After completing the returns, the Defendants and those acting at their direction falsely tell the customers that these forms legally increased the customers' refunds, and charge higher (and often undisclosed) fees due to the additional forms and the higher refund that the Defendants claimed. The Defendants charge customers fees for preparing the return, fees for each tax form attached to the return, and fees for filing the return. These fees are all deducted from the customer's tax refund, often

6

without the customer being told the amount that the Defendants actually charged for preparing the tax return.

22.    The Defendants request on customers' tax returns a refund amount that is not based on the customer's actual income, expenses, deductions, and applicable qualifying credits. Instead, the refund is based on fabricated income, expenses, deductions, and credits reported by the Defendants.

23.    The Defendants engage in unlawful tax return preparation practices including:

a.    Fabricating businesses and related business income and expenses;

b.    Making false claims for the Earned Income Tax Credit;

c.    Circumventing due diligence requirements in order to unlawfully maximize the Earned Income Tax Credit;

d.    Fabricating itemized deductions, including for unreimbursed employee business expenses, charitable contributions, and state and local income taxes;

e.    Improperly claiming false filing status, such as Head of Household;

f.    Claiming education credits to which their customers are not entitled;

g.    Failing to identify the actual paid preparer of the tax return;

h.    Failing to provide customers with a copy of the completed tax return; and

i.    Charging deceptive and unconscionable fees.

### Phony Claims for the Earned Income Tax Credit and Failure to Comply with Due Diligence Requirements

24.    The Defendants prepare tax returns that include fraudulent claims for the Earned Income Tax Credit ("EITC") often based on fabricated business income and expenses, bogus or improperly-claimed dependents, and/or false filing status.

25.    The EITC is a refundable tax credit available to certain low-income working people.  The amount of the credit is based on the taxpayer's income, filing status, and claimed

7

number of dependents. *See* 26 U.S.C. § 32 and the accompanying Treasury Regulations. Because the EITC is a refundable credit, claiming an EITC can, in certain circumstances, reduce a taxpayer's federal tax liability below zero, entitling the taxpayer to a payment from the U.S. Treasury.

26.     Due to the method used to calculate the EITC, an individual can claim a larger EITC by claiming multiple dependents and, for certain income ranges, individuals with higher earned income are entitled to a larger credit than those with lower earned income.  The amount of the credit increases as income increases between $1 and $13,650, and decreases as income increases beyond $17,830.  Some tax preparers who manipulate reported income to maximize the EITC refer to this range of earned income corresponding to a maximum EITC as the "sweet spot" or "golden range."  For tax year 2014, the maximum EITC was $6,143 and was available to eligible individuals with three dependent children who earned income between $13,650 and $17,830.

27.     Because of the way the EITC is calculated, reporting more income, up to a certain point, allows customers to receive a larger refundable credit.  Similarly, claiming losses to offset higher income to decrease the total reported income and to fall within the "sweet spot" allows customers to claim a larger refundable credit.

28.     The Defendants falsify information to claim the maximum EITC for customers. For example, to bring the customer's reported earned income within the "sweet spot" for the EITC, and depending on a customer's actual income, the Defendants inflate or fabricate business income reported on a Form Schedule C, "Profit or Loss from Business (Sole Proprietorship)" (used to report income and expenses from a sole proprietorship), in order to fraudulently increase

customers' reported earned income, or claim bogus Schedule C expenses to fraudulently decrease customers' reported earned income.

29.    Because of the potential for abuse in claiming the EITC, Congress has authorized the Secretary of the Treasury to impose "due diligence" requirements on federal tax return preparers claiming the EITC for their customers. These "due diligence" requirements obligate the tax return preparer to make "reasonable inquiries" to ensure the customer is legitimately entitled to the EITC. The tax return preparer may not "ignore the implications of information furnished to, or known by, the tax return preparer, and must make reasonable inquiries if the information furnished to the tax return preparer appears to be incorrect, inconsistent, or incomplete." Tax return preparers must also document their compliance with these requirements and keep that documentation for three years.

30.    In 2015, the IRS investigated whether the Defendants' store located in St. Petersburg, Florida complied with the due diligence requirements. The IRS reviewed 23 tax year 2014 tax returns prepared and filed at that store, reviewed the related customer files, and interviewed the tax return preparer at Simplified Financial Services who prepared those tax returns. The preparer had graduated from high school but had no training in tax law. Tucker provided her employee with the only training on how to prepare tax returns. Tucker did not train the preparer on the due diligence requirements. Tucker instructed the preparer to only ask the questions on the IRS Form 8867 and not to ask additional questions or to request documentation, where necessary, as required in order to comply with the due diligence requirements. The IRS determined that all 23 of the reviewed tax returns failed to comply with the due diligence requirements. The IRS assessed $11,500 against Tucker for 23 violations of 26 U.S.C. § 6695(g).

31.     The Defendants fail to comply with the due diligence requirements. The Defendants show an intentional disregard for the tax laws and in particular for the due diligence requirements.

### Fabricated Schedule C Business Income and Expenses

32.     The Defendants prepare tax returns reporting non-existent businesses on bogus Forms Schedule C. On some of these returns, the Defendants report substantial business income, but little or no expenses. On other returns, the Defendants report substantial expenses, but little or no income. The determining factor is whether the tax return preparer needs to inflate a customer's income (or create income when the customer has none) to bring the reported income within the EITC "sweet spot," or to lower the taxable income of a customer who has actual income (such as wages reported on a W-2) in order to either bring the income within the EITC "sweet spot" or simply to create a phony business loss to offset the customer's wages and falsely or fraudulently reduce the customer's income tax liability.

#### Customer 1

33.     For example, Customer 1 of Altamonte Springs, Florida had her 2014 federal income tax return and her 2014 amended federal income tax return prepared at the Simplified Financial Services store located in Orlando, Florida. Three weeks after the preparer prepared and filed the 2014 tax return, the preparer instructed Customer 1 to sign an amended tax return for 2014 in order to get an additional tax refund for those years. Customer 1 did not understand why this was necessary but signed and mailed the amended tax return to the IRS.

34.     Customer 1 received wages totaling $48,586 through her employment as a health care worker, and she occasionally performed home health care on her own to earn additional income.

35.     On the Schedule C attached to Customer 1's 2014 Form 1040 tax return, the preparer reported that Customer 1 received $1,024 providing home health care, but falsely reported that Customer 1 incurred related expenses totaling $21,415. The fabricated expenses included $152 for advertising, $11,432 for car and truck expenses (based on purportedly driving 19,598 miles related to her home health care business), $228 for supplies, $2,008 for a cell phone, $1,847 for car insurance, and $4,898 for gas. Thus, the preparer claimed a fabricated business loss in the amount of $20,391, or nearly half of Customer 1's wage income. By falsely claiming "Head of Household" filing status and claiming Customer 1's niece as a dependent, as discussed in paragraph 134, *infra*, and reporting a phony business loss, the preparer falsely reduced Customer 1's taxable income, claimed a phony Child Tax Credit, claimed a fabricated EITC in the amount of $1,652 and a bogus refund of $7,721 on Customer 1's 2014 tax return.

36.     On the Schedule C attached to Customer 1's 2014 Form 1040X amended tax return, prepared 3 weeks after the original tax return, the preparer falsely claimed those same fabricated expenses but in larger amounts: $19,193 for car and truck expenses (based on purportedly driving 32,874 miles related to her home health care business), $278 for supplies, $2,808 for a cell phone, $2,587 for car insurance, and $5,487 for gas. These false claims resulted in a phony business loss in the amount of $29,481, and an additional bogus tax refund claimed in the amount of $2,164 (and a total bogus tax refund claimed for 2014 in the amount of $9,885). The bogus amended return also claimed a fabricated EITC in the amount of $3,098 and a larger phony Child Tax Credit.

**Customers 2 and 3**

37.     Customer 2 and 3 of Pensacola, Florida had their 2014 and 2015 federal income tax returns prepared at the Simplified Financial Services store in Pensacola. Customers 2 and 3

11

were both employed in 2014; Customer 2 was also employed in 2015. Customer 3 earned additional income outside of her job in 2014, and in 2015, through housekeeping and gardening.

38.     In 2014, Customers 2 and 3 earned wages totaling $50,123. On the Schedule C attached to the 2014 tax return of Customers 2 and 3, the preparer falsely reported that Customer 3 owned a "construction" business. The preparer falsely reported that Customer 3 did not receive any gross receipts through this non-existent business, but incurred $25,934 expenses, all purportedly for "depletion." Customer 3 did not have a construction business and did not inform the preparer that she had "depletion" expenses, or any other expenses for a business, totaling $25,934. By falsely claiming that the non-existent business lost $25,934, the preparer falsely reduced the taxable income of Customers 2 and 3, and claimed a fabricated EITC in the amount of $5,067 and a bogus refund of $9,255 on the 2014 tax return of Customers 2 and 3.

39.     In 2015, Customer 2 received wages totaling $38,950. Customer 3 earned income through her housekeeping and gardening business. On the Schedule C attached to the 2015 tax return, the preparer falsely reported that Customer 2 owned a business (he did not), not identified by name or type of business, through which Customer 2 purportedly received $2,262 in gross receipts, but incurred $10,165 in expenses. The fabricated expenses included $9,867 for "depletion" and $298 for supplies. By falsely claiming that the non-existent business lost $7,903, the preparer falsely reduced the taxable income of Customers 2 and 3, and claimed a fabricated EITC in the amount of $3,938 and a bogus refund of $6,776 on the 2015 tax return of Customers 2 and 3.

40.     Customers 2 and 3 had a different tax preparation business prepare and file amended tax returns for 2014 and 2015 to remove the false claims reported by Simplified Financial Services. Customers 2 and 3 explained on both the amended 2014 and 2015 tax returns

that the amended returns were filed because "Simplified financial Services ... fraudulently filed [a] Schedule C when [Customers 2 and 3] never provided such information to them."

**Customer 4**

41.     Tucker prepared the 2013 federal income tax return of Customer 4 of Kissimmee, Florida. Customer 4 had her 2014, 2015, and 2016 federal income tax returns prepared at the Simplified Financial Services stores in Orlando, Florida. Customer 4 worked for healthcare providers in the Orlando-area in 2013, 2014, 2015, and 2016, and received Forms W-2 from her employers. Customer 4 did not own or operate her own business during any of these years. Customer 4 provided Tucker and the other preparers at Simplified Financial Services copies of her Forms W-2.

42.     In 2013, Customer 4 received wages through her employment totaling $22,632. On the Schedule C attached to Customer 4's 2013 tax return, Tucker falsely reported that Customer 4 owned a health care business through which she received $846 in gross receipts, but incurred $6,813 in expenses. The fabricated expenses included $299 for advertising, $499 for supplies, $540 for a cell phone, $549 for uniforms, $219 for shoes, $2,419 for gas, and $2,288 for car insurance. By falsely claiming that the non-existent business lost $5,967, Tucker falsely reduced Customer 4's taxable income, and claimed an inflated EITC in the amount of $3,250 and a bogus refund of $5,471 on Customer 4's 2013 tax return.

43.     In 2014, Customer 4 received wages totaling $66,336. On the Schedule C attached to Customer 4's 2014 tax return, the Simplified Financial Services preparer falsely reported that Customer 4 had a health services business that received $650 in gross receipts, but incurred $12,442 in expenses. The fabricated expenses included $550 for advertising, $10,220 for car and truck expenses (based on purportedly driving 18,250 miles for the non-existent

business), $152 for supplies, and $1,520 for travel.  By falsely claiming that the non-existent

business lost $11,792, the preparer falsely reduced Customer 4's taxable income, and claimed an

inflated EITC in the amount of $1,484 and a bogus refund of $5,088 on Customer 4's 2014 tax

return.

44.     In 2015, Customer 4 received wages totaling $28,380. On the Schedule C

attached to Customer 4's 2015 tax return, the Simplified Financial Services preparer falsely

reported that Customer 4 had a health services business that received $1,965 in gross receipts,

but incurred $10,814 in expenses.  The fabricated expenses included $555 for advertising, $9,344

for car and truck expenses (based on purportedly driving 16,250 miles for the non-existent

business), $153 for supplies, and $762 for meals and entertainment.  By falsely claiming that the

non-existent business lost $8,849, the preparer falsely reduced Customer 4's taxable income, and

claimed an inflated EITC in the amount of $3,133 and a bogus refund of $6,482 on Customer 4's

2015 tax return.

45.     In 2016, Customer 4 received wages totaling $39,084. On the Schedule C

attached to Customer 4's 2016 tax return, the Simplified Financial Services preparer falsely

reported that Customer 4 had a health services business that received $1,843 in gross receipts,

but incurred $16,087 in expenses.  The fabricated expenses included $85 for advertising, $10,916

for car and truck expenses (based on purportedly driving 20,214 miles for the non-existent

business), $729 for supplies, $175 for utilities, $2,436 for car insurance, $1,321 for a cell phone,

and $425 for uniforms.  By falsely claiming that the non-existent business lost $14,690, the

preparer falsely reduced Customer 4's taxable income, and claimed an inflated EITC in the

amount of $2,384 and a bogus refund of $5,966 on Customer 4's 2016 tax return.

46.     Neither Tucker nor any tax return preparer at Simplified Financial Services informed Customer 4 that they reported fabricated business income and expenses on Customer 4's tax returns.  Nor did Tucker or any tax return preparer at Simplified Financial Services inform Customer 4 how much she was charged to have the tax returns prepared.

**Customer 5**

47.     Customer 5 of Pensacola, Florida had her 2016 federal income tax return prepared at the Simplified Financial Services store in Pensacola.  Customer 5 was employed in 2016 and earned additional income by driving for Uber part-time.  Customer 5 provided the preparer at Simplified Financial Services with a copy of her Form W-2 from her job, Form 1099 from Uber, and Forms 1099 related to a pension or annuity.

48.     In 2016, Customer 5 received wages through her employment totaling $19,522.  Customer 5 also received income from a pension or annuity in the amount of $26,793.  On the Schedule C attached to Customer 5's 2016 tax return, the preparer reported that Customer 5 received gross receipts in the amount of $460 driving for Uber.  The preparer then falsely reported that Customer 5 incurred $17,871 in expenses while driving for Uber.  The fabricated expenses included $89 for advertising, $16,137 for car and truck expenses (based on purportedly driving 29,884 miles), $146 for meals and entertainment, and $1,499 for a cell phone.  In reality, Customer 5 did not lose $17,411 while driving for Uber, did not provide the phony expenses amounts to the preparer, and was unaware that the preparer reported these fabricated expenses on her tax return.  By falsely claiming that Customer 5 lost $17,411 while driving for Uber, the preparer falsely reduced Customer 5's taxable income, and claimed an inflated EITC in the amount of $723 and a bogus refund of $4,951 on Customer 5's 2016 tax return.  The preparer did not tell Customer 5 how much she was charged to have the tax return prepared.

**Customers 6 and 7**

49.     Customers 6 and 7 of Apopka, Florida had their 2016 federal income tax return prepared at the Simplified Financial Services store in Kissimmee, Florida. Customer 6 was employed by Southwest Airlines and Customer 7 was employed by the county in 2016. Customer 6 earned additional income by driving for Uber part-time. Customers 6 and 7 provided the preparer at Simplified Financial Services with copies of their Forms W-2 from their jobs and the Form 1099 from Uber.

50.     In 2016, Customers 6 and 7 received wages through their employment totaling $87,816. On the Schedule C attached to the 2016 tax return, the preparer reported that Customer 6 received gross receipts in the amount of $347 driving for Uber. The preparer then falsely reported that Customer 6 incurred $20,969 in expenses while driving for Uber. The fabricated expenses included $12,247 for car and truck expenses (based on purportedly driving 19,458 miles), $3,432 for a cell phone, $2,400 for car insurance, and $2,880 gas. In reality, Customer 6 did not lose $20,612 while driving for Uber, did not provide the phony expenses amounts to the preparer, and was unaware that the preparer reported these fabricated expenses on the tax return.

51.     Additionally, on the Form Schedule A attached to the 2016 tax return, the preparer falsely claimed personal expenses totaling $1,550, for a "kitchen repair," landscaping, and paint, as deductible expenses. The preparer also falsely claimed a state and local income tax deduction in the amount of $5,761 on the Schedule A by falsely reporting the total federal income taxes withheld from the wages of Customers 6 and 7, as reported on their Forms W-2, as state and local taxes paid. By falsely claiming on the Schedule C that Customer 6 lost $20,612 while driving for Uber and falsely claiming non-deductible expenses on the Schedule A, the

16

preparer falsely reduced the taxable income reported on the 2016 tax return of Customers 6 and 7, and claimed a bogus refund of $1,985 on the 2016 tax return of Customers 6 and 7.

**Customer 8**

52.     Customer 8 of Orlando, Florida had his 2013, 2014, 2015, and 2016 federal income tax returns prepared at the Simplified Financial Services stores in Orlando, Florida. Customer 8 was an employee at Disney in 2013, 2014, 2015, and 2016, and received Forms W-2 from Disney.  Customer 8 did not own or operate his own business during any of these years. Customer 8 provided the preparers at Simplified Financial Services copies of his Forms W-2.  A preparer also questioned Customer 8 about any general expenses that he incurred, and Customer 8 informed the preparer that he occasionally paid to have his car washed.

53.     In 2013, Customer 8 received wages in the amount of $29,374. On the Schedule C attached to Customer 8's 2013 tax return, the Simplified Financial Services preparer falsely reported that Customer 8 owned a car detailing business through which he received $1,742 in gross receipts, but incurred $13,759 in expenses.  The fabricated expenses included $325 for advertising, $10,144 for car and truck expenses (based on purportedly driving 17,954 miles for the non-existent business), $410 for supplies, $721 for a cell phone, $346 for shoes, $125 for tolls, and $1,688 for car insurance.  By falsely claiming that the non-existent business lost $12,017, the preparer falsely reduced Customer 8's taxable income, and claimed an inflated EITC in the amount of $3,250 and a bogus refund of $8,004 on Customer 8's 2013 tax return.

54.     In 2014, Customer 8 received wages in the amount of $30,118. On the Schedule C attached to Customer 8's 2014 tax return, the Simplified Financial Services preparer falsely reported that Customer 8 had a car detailing business that received $1,095 in gross receipts, but incurred $14,785 in expenses.  The fabricated expenses included $175 for advertising, $10,625

17

for car and truck expenses (based on purportedly driving 18,974 miles for the non-existent business), $384 for supplies, $450 for a cell phone, $195 for tolls, and $2,956 for car insurance. By falsely claiming that the non-existent business lost $13,690, the preparer falsely reduced Customer 8's taxable income, and claimed an inflated EITC in the amount of $3,305 and a bogus refund of $8,276 on Customer 8's 2014 tax return.

55.     In 2015, Customer 8 received wages in the amount of $37,690. On the Schedule C attached to Customer 8's 2015 tax return, the Simplified Financial Services preparer falsely reported that Customer 8 had a car detailing business that received $1,264 in gross receipts, but incurred $20,195 in expenses.  The fabricated expenses included $22 for advertising, $20,108 for car and truck expenses (based on purportedly driving 34,970 miles for the non-existent business), and $65 for supplies.  By falsely claiming that the non-existent business lost $18,931, the preparer falsely reduced Customer 8's taxable income, and claimed an inflated EITC in the amount of $3,253 and a bogus refund of $9,429 on Customer 8's 2015 tax return.

56.     In 2016, Customer 8 received wages totaling $39,972. On the Schedule C attached to Customer 8's 2016 tax return, the Simplified Financial Services preparer falsely reported that Customer 8 had a car detailing business that received $1,035 in gross receipts, but incurred expenses for costs of goods sold in the amount of $65, and incurred $18,500 in other expenses.  The fabricated expenses included $36 for advertising, $18,243 for car and truck expenses (based on purportedly driving 33,783 miles for the non-existent business), and $221 for supplies.  By falsely claiming that the non-existent business lost $17,530, the preparer falsely reduced Customer 8's taxable income, and claimed an inflated EITC in the amount of $2,696 and a bogus refund of $8,959 on Customer 8's 2016 tax return.

57.     The Simplified Financial Services preparers thus falsely reported that from 2013 through 2016, Customer 8 lost a total of $62,168 through a non-existent car detailing business. Customer 8 was not aware that the preparers at Simplified Financial Services reported these fabricated business losses on his tax returns.

**Customer 9**

58.     Customer 9 of Gautier, Mississippi had her 2016 federal income tax return prepared at the Simplified Financial Services store in Moss Point, Mississippi. Customer 9 was employed in 2016 and earned additional income through a bakery that she opened. Customer 9 incurred expenses of around $3,000 related to the bakery.

59.     In 2016, Customer 9 received wages in the amount of $36,963. Customer 9 also received income from a pension or annuity in the amount of $20,378. On the Schedule C attached to the 2016 tax return that Simplified Financial Services filed on behalf of Customer 9, the preparer reported that Customer 9 received gross receipts in the amount of $2,115 through the bakery. The preparer then falsely reported that Customer 9 incurred $30,600 in expenses, far more than the roughly $3,000 actually incurred. The fabricated expenses included $2,144 for advertising, $10,041 for car and truck expenses (based on purportedly driving 18,595 miles), $2,856 for insurance, $4,512 for supplies, $511 for taxes and licenses, $6,124 for wages, $2,561 for uniforms, and $1,851 for a cell phone. In reality, Customer 9 did not lose $28,485 through the bakery, did not provide the phony expenses amounts to the preparer, and was unaware that the preparer reported these fabricated expenses on her tax return.

60.     The preparer did not review the completed tax return with Customer 9. However, the copy of the tax return that the preparer provided to Customer 9 did not match the tax return actually filed with the IRS. The Schedule C attached to the copy provided to Customer 9 reports

19

that Customer 9 incurred expenses totaling $34,472, and reported a loss on the Schedule C in the amount of $32,357. Customer 9 was not aware that the filed tax return did not match the copy that she was provided.

61.     By falsely claiming on the filed tax return that Customer 9 lost $28,485 through her bakery, the preparer falsely reduced Customer 9's taxable income, and claimed an inflated EITC in the amount of $1,665 and a bogus refund of $5,531 on Customer 9's 2016 tax return.

### Bogus Schedule A Deductions

62.     The Defendants prepare tax returns reporting bogus itemized deductions on Form Schedule A, "Itemized Deductions," to improperly or fraudulently reduce customers' taxable income.

63.     For example, the Defendants prepare tax returns for customers that include Forms Schedule A making false claims for purported unreimbursed employee business expenses. Section 162 of the Internal Revenue Code governs trade or business expenses. The Defendants often claim deductions for fabricated, fraudulently inflated, and/or non-qualifying business expenses, particularly for purported business miles driven by customers. The Defendants ask customers whether they incurred expenses for such personal expenditures such as cell phones and clothing, without explaining to customers that these expenses are actually non-deductible. If the customer responds that they had such expenses, the Defendants then report these non-deductible expenses as deductible employee business expenses in amounts that the Defendants fabricate in order to maximize the customer's refund. In instances where customers do have actual qualifying expenses, such as for charitable contributions, the Defendants report a falsely inflated amount of the expense that the customer incurred, to improperly increase the tax refund claimed on the return.

20

64. The Defendants also prepare tax returns for customers who reside and are employed in Florida, where there is no state income tax. On the Forms Schedule A attached to these customers' tax returns, the Defendants often claim fabricated deductions for state and local taxes purportedly paid, frequently in an amount equal to the amount of the federal income tax withholdings reported on the customers' Forms W-2.

**Customers 10 and 11**

65. For example, Tucker prepared the 2013 federal income tax return of Customers 10 and 11 of Plymouth, Florida. Customers 10 and 11 had their 2014 and 2015 federal income tax returns prepared at the Simplified Financial Services store in Orlando, Florida.

66. Customer 10 worked for the school district and Customer 11 worked as a dental hygienist in 2013, 2014, and 2015.

67. Customers 10 and 11 received wages totaling $105,712 in 2013. On the Schedule A attached to the tax return, Tucker falsely claimed that Customers 10 and 11 incurred unreimbursed employee business expenses totaling $19,828.

68. Tucker also falsely reported that Customers 10 and 11 incurred other deductible expenses in the amount of $7,235, for personal expenses classified as "repairs roof" ($2,485), "repaint inside" ($1,875), and "repairs landscaping" ($2,875).

69. Tucker also falsely claimed that Customers 10 and 11 paid state personal property taxes in the amount of $10,200, real estate taxes in the amount of $729, and "other taxes" in the amount of $4,858 in 2013. Tucker also falsely reported that Customers 10 and 11 contributed $8,795 to charity in 2013.

70. As a result of the fabricated deductions claimed on the Schedule A, Tucker claimed a bogus refund in the amount of $6,820 on the 2013 tax return of Customers 10 and 11.

71.     Customers 10 and 11 received wages totaling $121,787 in 2014.  On the Schedule A attached to the tax return, the Simplified Financial Services preparer falsely claimed that Customers 10 and 11 incurred unreimbursed employee business expenses totaling $12,463. The preparer also falsely claimed that Customers 10 and 11 paid state and local income taxes in the amount of $13,227 (the total amount of federal income tax withholdings reported on the three Forms W-2 that Customers 10 and 11 provided to the preparer) and real estate taxes in the amount of $1,290.  The preparer also falsely reported that Customers 10 and 11 contributed $9,918 to charity in 2014.

72.     As a result of the fabricated deductions on the Schedule A, the preparer claimed a bogus refund in the amount of $2,583 on the 2014 tax return of Customers 10 and 11.

73.     Customers 10 and 11 received wages totaling $110,380 in 2015.  On the Schedule A attached to the tax return, the Simplified Financial Services preparer falsely claimed that Customers 10 and 11 incurred unreimbursed employee business expenses totaling $24,432.

74.     The preparer also falsely reported that Customers 10 and 11 incurred other deductible expenses in the amount of $15,786, for personal expenses classified as "home improvements" ($10,759), "installed shelves" ($1,257), and "painting" ($3,770).

75.     The preparer also falsely claimed that Customers 10 and 11 paid real estate taxes in the amount of $3,013 in 2015. The preparer also falsely reported that Customers 10 and 11 contributed $5,225 to charity in 2015.

76.     As a result of the fabricated deductions claimed on the Schedule A, the preparer claimed a bogus refund in the amount of $6,227 on the 2015 tax return of Customers 10 and 11.

**Customer 12**

77.     Customer 12 of Orlando, Florida had his 2014 and 2015 federal income tax returns prepared at the Simplified Financial Services store in Orlando.

78.     Customer 12 worked for UPS in 2014 and 2015.  Customer 12 also detailed cars on weekends, through which he earned approximately $2,500 annually.

79.     On the Schedule A attached to the 2014 tax return, the preparer falsely claimed that Customer 12 incurred unreimbursed employee business expenses in the amount of $10,913. The preparer also falsely claimed, as other deductible expenses, personal expenses in the amount of $2,193 for replacing an air conditioner. The preparer also falsely claimed a state and local income tax deduction in the amount of $9,919, which equals the amount of federal income tax withholding reported on the Form W-2 issued by UPS.  Customer 12 did not pay any state or local taxes in 2014.

80.     The preparer also falsely reported that Customer 12 incurred medical and dental expenses totaling $9,256 in 2014, and contributed $7,859 to charity.

81.     The preparer also falsely reported on the Schedule C attached to the 2014 tax return that Customer 12 incurred expenses totaling $25,561, including $425 for advertising, $8,154 for car and truck expenses (for purportedly driving 13,856 business miles), $4,291 for repairs and maintenance, $3,256 for supplies, $2,171 for a cell phone, $2,760 for car insurance, $792 for uniforms, and $3,712 for gas related to Customer 12's car detailing business, through which he earned approximately $2,500 before expenses.  The preparer thus claimed a phony loss in the amount of $22,998 on the Schedule C attached to Customer 12's 2014 tax return.

82.     Customer 12 did not incur these expenses and did not provide these amounts to the preparer.

83.     As a result of the phony deductions claimed on the Schedule A and the fabricated loss of $22,998 reported on the Schedule C, the Simplified Financial Services preparer claimed a bogus refund in the amount of $6,243 on Customer 12's 2014 tax return.

84.     On the Schedule A attached to the 2015 tax return, the preparer falsely claimed personal expenses, again for replacing an air conditioner in the amount of $2,295, and for replacing a pool pump in the amount of $459, as other deductible expenses.  The preparer also falsely claimed that Customer 12 incurred unreimbursed employee business expenses in the amount of $14,511.

85.     The preparer again falsely reported that Customer 12 incurred medical and dental expenses totaling $9,256 in 2015, and contributed $7,859 to charity, the exact same phony amounts were claimed on his 2014 tax return.

86.     The preparer also falsely reported on the Schedule C attached to the 2015 tax return that Customer 12 incurred expenses totaling $25,374, including $425 for advertising (the same amount reported on the 2014 tax return), $7,967 for car and truck expenses (for purportedly driving 13,856 business miles – the same amount of fabricated miles reported on the 2014 tax return), $4,291 for repairs and maintenance (the same amount reported on the 2014 tax return), $3,256 for supplies (the same amount reported on the 2014 tax return), $2,171 for a cell phone (the same amount reported on the 2014 tax return), $2,760 for car insurance (the same amount reported on the 2014 tax return),  $792 for uniforms (the same amount reported on the 2014 tax return), and $3,712 for gas (the same amount reported on the 2014 tax return) related to Customer 12's car detailing business, through which he earned approximately $2,500 before expenses.  The preparer thus claimed a phony loss in the amount of $22,811 on the Schedule C attached to Customer 12's 2015 tax return.

87.     Customer 12 did not incur these expenses and did not provide these amounts to the preparer.

88.     As a result of the phony deductions claimed on the Schedule A and the fabricated loss of $22,811 reported on the Schedule C, the Simplified Financial Services preparer claimed a bogus refund in the amount of $7,925 on Customer 12's 2015 tax return.

### Customers 13 and 14

89.     Customers 13 and 14 of Orlando, Florida had their 2014 and 2015 federal income tax returns prepared at the Simplified Financial Services stores in Orlando and Kissimmee, Florida, respectively. Customer 13 worked for a courier company and Customer 14 worked for the school district.

90.     Customers 13 and 14 received wages totaling $62,194 in 2014.  On the Schedule A attached to the 2014 tax return, the Simplified Financial Services preparer falsely claimed that Customer 13 incurred unreimbursed employee business expenses totaling $12,243. The fabricated expenses included $10,372 in vehicle expenses (for purportedly driving 18,521 business miles) and $1,145 for parking fees and tolls. The preparer also falsely reported that Customers 13 and 14 paid home mortgage interest in the amount of $17,485, when, in reality, they paid $5,274 in home mortgage interest in 2014.

91.     Customers 13 and 14 did not incur these claimed expenses and did not provide the claimed amounts to the preparer.

92.     The preparer also falsely claimed personal expenses for "repair wealth" ($402) and "repair pool" ($350) as other deductible expenses on the Schedule A.

93.     As a result of the fabricated unreimbursed employee business expenses, the preparer claimed a bogus refund in the amount of $2,849 on the 2014 tax return of Customers 13 and 14.

94.     Customers 13 and 14 received wages totaling $67,522 in 2015.  On the Schedule A attached to the 2015 tax return, the Simplified Financial Services preparer falsely claimed itemized deductions totaling $52,459.  The preparer falsely claimed that Customers 13 and 14 incurred unreimbursed employee business expenses totaling $31,596, or over 46% of the combined wages of Customers 13 and 14. The preparer also falsely reported that Customers 13 and 14 paid real estate taxes totaling $11,710, when, in reality, they paid $3,041 in real estate taxes in 2015.

95.     Customers 13 and 14 did not incur these claimed expenses and did not provide the claimed amounts to the preparer.

96.     The preparer also falsely claimed personal expenses for "roof repair" ($2,599), "screen repair" ($550), and "landscaping" ($502) as other deductible expenses on the Schedule A.  As a result of the fabricated expenses claimed on the Schedule A, the preparer claimed a bogus refund in the amount of $4,932 on the 2015 tax return of Customers 13 and 14.

**Customers 15 and 16**

97.     Customers 15 and 16 of Oviedo, Florida had their 2016 federal income tax return prepared at the Simplified Financial Services store in Orlando, Florida.

98.     Customer 15 worked at a pet store and Customer 16 worked at Lowe's in 2016. Customers 15 and 16 received wages totaling $87,693 in 2016. On the Schedule A attached to the tax return, the preparer falsely claimed unreimbursed employee business expenses totaling $19,170.  The preparer also claimed personal, non-deductible expenses as other deductible

expenses on the Schedule A, for a "fridge" ($1,705), a "range" ($954), and a "freezer" ($555). The preparer asked Customers 15 and 16 about their personal expenses, and then falsely reported these personal expenses on the tax return.

99.     Customers 15 and 16 did not incur job-related expenses and did not inform the preparer that they had any job-related expenses.

100.     The preparer also falsely reported that Customers 15 and 16 paid home mortgage interest in the amount of $37,127, when the Form 1098 "Mortgage Interest Statement" issued by the lender shows that Customers 15 and 16 paid mortgage interest totaling $3,577 in 2016. The itemized deductions claimed on the Schedule A thus totaled $60,719.

101.     As a result of the phony itemized deductions claimed on the Schedule A, the Simplified Financial Services preparer claimed a bogus refund in the amount of $7,767 on the 2016 tax return of Customers 15 and 16.

**Customer 17**

102.     Customer 17 of Orlando, Florida has his 2014 and 2015 federal income tax returns prepared at the Simplified Financial Services store located in Orlando.

103.     Customer 17 did not work in 2014 and 2015, but received income from a pension from the State of Florida and social security.

104.     On the Schedule A attached to the 2014 tax return, the Simplified Financial Services preparer falsely reported that Customer 17 paid state and local income taxes totaling $11,390, an amount equal to the federal income tax withheld as reported on the Form 1099-R issued by the State of Florida. The preparer also falsely claimed that Customer 17 incurred medical and dental expenses in the amount of $20,290 in 2014. The preparer also falsely claimed

27

that Customer 17 contributed $2,569 to charity in 2014. Customer 17 did not incur any such expenses, and did not inform the preparer that he incurred such expenses.

105.    As a result of the phony deductions claimed on the Schedule A, the Simplified Financial Services preparer claimed a bogus refund in the amount of $4,052 on Customer 17's 2014 tax return.

106.    On the Schedule A attached to the 2015 tax return, the Simplified Financial Services preparer falsely reported that Customer 17 paid state and local income taxes totaling $11,804, an amount equal to the federal income tax withheld as reported on the Form 1099-R issued by the State of Florida.  The preparer also falsely claimed that Customer 17 contributed $6,256 to charity in 2015. Customer 17 did not incur any such expenses, and did not inform the preparer that he incurred such expenses.

107.    As a result of the phony deductions claimed on the Schedule A, the Simplified Financial Services preparer claimed a bogus refund in the amount of $1,654 on Customer 17's 2015 tax return.

**Customer 18**

108.    Customer 18 of Kissimmee, Florida had his 2014 and 2015 federal income tax returns prepared at the Simplified Financial Services stores in Orlando and Kissimmee, Florida, respectively.

109.    Customer 18 was employed at T-Mobile in 2014 and 2015.

110.    Customer 18 received wages totaling $65,661 in 2014. On the Schedule A attached to the tax return, the preparer claimed fabricated itemized deductions totaling $51,846. The preparer falsely reported that Customer 18 incurred unreimbursed employee business expenses totaling $23,428, including personal expenses for a cell phone and car insurance.

28

Customer 18 did not incur job-related expenses and did not inform the preparer that he had any job-related expenses.

111.    The preparer falsely reported that Customer 18 paid personal property taxes in the amount of $11,005. The preparer also falsely reported that Customer 18 paid home mortgage interest in the amount of $15,594, or exactly double the amount that he actually paid and that was reported to him on the Form 1098 "Mortgage Interest Statement" that he provided the preparer.

112.    As a result of the phony itemized deductions claimed on the Schedule A, the Simplified Financial Services preparer claimed a bogus refund in the amount of $6,247 on Customer 18's 2014 tax return.

113.    Customer 18 received wages totaling $61,211 in 2015. On the Schedule A attached to the tax return, the preparer claimed fabricated itemized deductions totaling $58,535. The preparer falsely reported that Customer 18 incurred unreimbursed employee business expenses totaling $30,967, or over 50% of the wages he received.

114.    The preparer falsely reported that Customer 18 paid personal property taxes in the amount of $12,481. The preparer also falsely reported that Customer 18 incurred other deductible expenses in the amount of $3,051, for personal expenses classified as "water softner [sic]" ($1,784) and "landscaping" ($1,267).

115.    As a result of the phony itemized deductions claimed on the Schedule A, the Simplified Financial Services preparer claimed a bogus refund in the amount of $6,887 on Customer 18's 2015 tax return.

**Customer 19**

116.    Customer 19 of St. Petersburg, Florida had her 2014 and 2015 federal income tax returns prepared at the Simplified Financial Services stores in Orlando and Apopka, Florida, respectively. Customer 19 did not have her tax returns prepared in person, but emailed her Forms W-2, 1098 Mortgage Interest Statement, 1098-T Tuition Statement, and 1099-R to the preparer. Customer 19 was employed full-time as an insurance adjuster in 2014 and 2015 and did not own or operate her own business.

117.    Customer 19 received wages totaling $59,548 in 2014. On the Schedule A attached to the tax return, the preparer claimed fabricated itemized deductions totaling $32,509. The preparer also falsely claimed on the Schedule C attached to the return that Customer 19 lost $20,814 through a home business.

118.    The preparer falsely reported on the Schedule A attached to the 2014 tax return that Customer 19 paid personal property taxes in the amount of $8,314. The preparer also falsely reported that Customer 19 paid home mortgage interest in the amount of $11,034, or approximately double the amount that she actually paid ($5,516) and that was reported to her on the Form 1098 "Mortgage Interest Statement" that she provided the preparer. The preparer also falsely claimed that Customer 19 paid $1,100 in interest on qualified mortgage insurance premiums in 2014. The preparer also falsely claimed that Customer 19 incurred medical and dental expenses in the amount of $7,143 and contributed $4,895 to charity in 2014.

119.    Customer 19 did not incur the claimed expenses, did not provide these amounts to the preparer, and did not know that the preparer reported these fabricated amounts on her 2014 tax return.

120.    The preparer also falsely reported personal expenses as other deductible expenses on the Schedule A, for a "replaced refrigerator" ($2,006) and a "repaired garage door" ($849).

121.    The preparer falsely claimed on the Schedule C attached to the 2014 tax return that Customer 19 had a childcare business through which she received gross receipts totaling $1,315 but incurred expenses totaling $22,129.  Customer 19 did not have any such business and did not inform the preparer that she had such a business.  The phony expenses claimed included $185 for advertising, $12,808 for car and truck expenses (for purportedly driving 21,451 business miles), $1,942 for supplies, $923 for deductible meals and entertainment, $1,440 for a cell phone, $1,925 for insurance, $2,324 for gas, and $582 for uniforms.

122.    As a result of the phony deductions claimed on the Schedule A, the bogus loss on the Schedule C, and an inflated education credit discussed in paragraph 137, *infra*, the Simplified Financial Services preparer claimed a bogus refund in the amount of $4,749 on Customer 19's 2014 tax return.

123.    Customer 19 received wages totaling $63,303 in 2015. On the Schedule A attached to the tax return, the preparer falsely reported that Customer 19 incurred unreimbursed employee business expenses totaling $15,443, including for personal expenses such as a cell phone and car insurance. The preparer also falsely claimed that Customer 19 incurred medical and dental expenses in the amount of $3,824 and contributed $5,944 to charity in 2015. Customer 19 did not incur these expenses and did not provide these amounts to the preparer.

124.    As a result of the phony deductions claimed on the Schedule A and the fabricated education credit, discussed in paragraph 138, *infra*, the Simplified Financial Services preparer claimed a bogus refund in the amount of $4,700 on Customer 19's 2015 tax return.

125.    The Simplified Financial Services preparers did not inform Customer 19 how much she was charged to have these tax returns prepared.

**Customer 20**

126.    Customer 20 of Pascagoula, Mississippi had her 2016 federal income tax return prepared at the Simplified Financial Services store in Moss Point, Mississippi.

127.    Customer 20 is employed as a nurse. Customer 20 works at a facility but also occasionally drives her car to attend to patients, and drove roughly 3,000 miles for her job in 2016. Customer 20 provided the preparer with her Form W-2 and log books showing her job-related personal vehicle mileage.

128.    Customer 20 received wages totaling $26,225 in 2016. On the Schedule A attached to the 2016 tax return, the preparer falsely claimed that Customer 20 incurred unreimbursed employee business expenses totaling $10,227, or over 38% of her wages. Customer 20 did not incur unreimbursed employee business expenses in this amount and did not provide this amount to the preparer. The fabricated job-related expenses claimed included a vehicle expense for business mileage driven, reported in the inflated amount of 18,938 miles.

129.    As a result of the phony deductions claimed on the Schedule A, the Simplified Financial Services preparer claimed a bogus refund in the amount of $6,715 on Customer 20's 2016 tax return.

130.    The preparer did not provide Customer 20 with a copy of her completed 2016 tax return. Customer 20 believes that she was charged around $900 to have the tax return prepared.

### Intentionally Claiming an Improper Filing Status and Bogus Dependents

131.    The Defendants prepare tax returns reporting false filing status. Specifically, Head of Household filing status is claimed on customers' tax returns to increase the amount of

the customers' standard deduction, when the Defendants know that the customer does not qualify for Head of Household filing status.

132.    The Defendants file separate returns for married couples who are not living apart, improperly using the "Head of Household" or "Single" filing status, both of which are unavailable to married couples living together.  Often, this is an attempt to increase the claimed EITC; a qualifying couple with at least two children who, together, might otherwise receive a single EITC refund of $5,000 by properly claiming "married, filing jointly," may instead each unlawfully receive a refund of $3,000 or more, by both falsely claiming Head of Household or single status and each claiming at least one dependent.

133.    Additionally, the Defendants claim dependents who do not actually qualify as dependents on customers' tax returns, and then claim Head of Household filing status to increase the customers' refunds through both the false filing status and fraudulent EITC claim based on the bogus dependents.

**Customer 1 (continued)**

134.    For example, on Customer 1's 2014 original and amended tax returns, the preparer falsely claimed Customer 1's niece, who lived with Customer 1's sister in Puerto Rico, as a dependent.  Customer 1's sister and niece occasionally stayed with Customer 1 in 2014, but Customer 1 did not financially support them.  The preparer falsely told Customer 1 that she could claim her niece as a dependent on the tax return, and then the preparer then falsely reported on the tax return that Customer 1's niece was her "daughter."  The preparer also falsely reported Customer1's filing status as "Head of Household."  As discussed in paragraphs 35 and 36, *supra*, this resulted in Customer 1's 2014 original and amended tax returns claiming a phony Child Tax Credit, fabricated EITC, and a bogus refund.

**Bogus Education Credits**

135.    The Defendants, and the tax return preparers acting at their direction or with their knowledge and consent, also claim bogus education expenses and falsely claim refundable education credits, including the American Opportunity education credit, on customers' federal income tax returns. Unlike many tax credits, a refundable tax credit entitles qualifying taxpayers to receive refunds even if they have no tax liability. The Defendants, and the tax return preparers acting at their direction or with their knowledge and consent, claim false education credits on the tax returns of customers who did not attend college and had no qualifying education expenses, in order to reduce their customers' taxable income and generate a larger bogus refund.

**Customer 19 (continued)**

136.    For example, Customer 19's son attended college in 2014, but most of his expenses were covered by scholarships or grants. Customer 19 paid the remaining expenses. Customer 19 provided the Form 1098-T "Tuition Statement" to the preparer showing the amount of the tuition billed and the amount of the scholarships and grants.

137.    In 2014, as reflected on the Form 1098-T, Customer 19's out-of-pocket education expenses totaled $1,675. However, the preparer falsely reported that Customer 19 incurred $3,999 in education-related expenses, and falsely claimed an inflated refundable education credit in the amount of $286 and an American Opportunity education credit in the maximum amount of $1,000 on Customer 19's 2014 tax return.

138.    No Form 1098-T was issued for 2015 related to Customer 19's son. However, the preparer falsely reported that Customer 19 incurred education-related expenses in the amount of $3,980. The preparer then falsely claimed a refundable education credit in the amount of $1,497

and an American Opportunity education credit in the amount of $998 on Customer 19's 2015 tax return.

### Customer 21

139.    Customer 21 of St. Petersburg, Florida had her 2014 and 2015 federal income tax returns prepared at the Simplified Financial Services store in St. Petersburg. Customer 21's 2016 tax return was prepared at the Simplified Financial Services store in Orlando. Customer 21 was employed as a nurse in 2014, 2015, and 2016.

140.    Customer 21 did not attend college in 2015 and did not incur any education-related expenses. On Customer 21's 2015 tax return, the preparer falsely reported that Customer 21 incurred $3,991 in education-related expenses related to "Ultimate Medical," and claimed a bogus American Opportunity education credit in the amount of $999 on Customer 21's 2015 tax return.

141.    The Simplified Financial Services preparers falsely reported on the Forms Schedule C attached to Customer 21's 2014 and 2016 tax returns that Customer 21 had a business through which she lost $10,284 and $21,664, respectively, in order to generate bogus tax refunds.

142.    Customer 21 did not receive copies of her completed tax returns and does not know how much Simplified Financial Services charged to prepare the tax returns, as the fees were taken from the refunds.

### Unconscionable and Undisclosed Fees

143.    The Defendants charge unconscionably high fees to prepare tax returns, which are typically charged without customers' knowledge. The Defendants charge these high fees to

prepare and file false tax returns with unnecessary and bogus forms and schedules attached, when they should have honestly prepared a basic Form 1040 tax return.

144.   The Defendants intentionally deceive customers regarding the fees charged for the preparation of tax returns.  The Defendants do not disclose the full amount of the fee and, when having the customer sign forms showing the fee, cover the fee with a hand or a piece of paper and do not explain to the customer what the customer is signing.

145.   The Defendants charge additional fees for each form and schedule (such as a Schedule C or a Form 8863 for an education credit) attached to the Form 1040 tax return.  The Defendants charge separate fees for forms and schedules such as the electronic filing authorization (Form 8879) which is required for e-filing, the EITC qualifying child form (Schedule EIC), and the related EITC due diligence checklist (Form 8867), which must be completed in connection with a claim for the EITC.  These fees result in a total tax return preparation fee much higher than the amount advertised, often $1,000 or more.

146.   The high fees charged (and the fee structure, which encourages the addition of unnecessary and often improper forms and schedules to the Form 1040) are a strong incentive for the Defendants to prepare and file false or fraudulent tax returns claiming excessive refunds based on bogus claims and associated forms and schedules.

147.   Because the Defendants target low-to-moderate-income individuals, the high fees frequently can pose a significant financial hardship for customers.  Customers may be required to pay back the improper refunds that they receive.  Because the Defendants deduct their high fees directly from her customers' refunds, customers required to return these improper refunds to the government must also return the portion subtracted as fees.  Thus, customers are then out-of-pocket the high fees that the Defendants charged.

148. The Defendants also routinely and intentionally fail to disclose to customers all fees charged. The Defendants present forms to customers to sign, including a form acknowledging the fees charged, without allowing the customer to closely review or understand the forms they are signing. Alternatively, the Defendants tell customers one amount for fees and then later increase the fees without the customers' knowledge or consent. Customers are often surprised to learn that the refund requested on their return is hundreds if not thousands of dollars more than the refund amount that they received after the fees were deducted.

149. The Defendants' fees are not paid by customers at the time of the preparation of their tax returns, but instead are subtracted from the customers' tax refund. By doing so, the Defendants are able to conceal from unsuspecting customers the actual amount that the customers pay to have their tax return prepared. Customers typically do not discover that the fees charged are much more than the customers anticipated for the preparation of their tax return until the customers receive a refund that is much less than quoted by the tax return preparer, after the Defendants subtracted their high fees.

150. The Defendants' practice of charging unconscionable and undisclosed fees interferes with the administration and enforcement of the Internal Revenue laws. Such behavior erodes consumer confidence in tax return preparers and dissuades taxpayers from seeking professional assistance with the preparation of their federal tax returns.

### Failure to Provide Customers with Copies of their Completed Tax Returns in Violation of 26 U.S.C. § 6107(a)

151. The Defendants fail to provide customers with copies of their completed tax returns. The completed tax return, filed with the IRS, shows the refund that the Defendants are claiming for the customer. For example, a customer who is provided a copy of a tax return showing the actual tax refund claimed is able to determine the amount of fees that the

Defendants charged by subtracting the amount of the refund that the customer actually receives from the amount of the refund claimed on the tax return. The Defendants' failure to provide a copy of a customer's completed tax return is part of the strategy to conceal the actual fees from their customers.

152.    Failing to provide a customer with a copy of the completed tax return also violates 26 U.S.C. § 6107(a), which requires that a tax return preparer "shall furnish a completed copy of [a tax return or claim for refund] to the taxpayer not later than the time such return or claim is presented for such taxpayer's signature."

153.    Customers who do receive a copy of the tax return often receive only the first two pages of the Form 1040, but not the other forms filed with the return, such as Forms Schedule C, Forms Schedule A, and Forms 2106, "Employee Business Expenses." This is because the Defendants make false claims on these forms and, to conceal the claims from customers, do not provide customers with copies of these completed forms.

### Harm Caused by the Defendants

154.    The Defendants' preparation of false and fraudulent tax returns at their tax return preparation stores, false and misleading statements directed to customers and potential customers, and culture favoring volume and ill-gotten profits over accuracy and integrity have harmed the public and the United States Treasury. These practices harm the public because the Defendants and many of their preparers prepare false or fraudulent tax returns that understate their customers' correct income tax liabilities and illegally cause customers to incorrectly report their federal tax liabilities and underpay their taxes.

155.    Defendants' conduct (and that of their preparers) harms the United States Treasury by causing lost tax revenue. By way of example, during the IRS's investigation of the

Defendants, the IRS examined 6 tax returns for tax year 2013, 22 tax returns for tax year 2014, and 20 tax returns for tax year 2015 prepared at Simplified Financial Services. Of the 6 tax returns for 2013 examined, the IRS made adjustments to all 6 tax returns, with a total tax deficiency of $37,907, or an average tax deficiency of $6,317.83 per examined return. Of the 22 tax returns for 2014 examined, the IRS made adjustments to all 22 tax returns, with a total tax deficiency of $147,768, or an average tax deficiency of $6,716.73 per examined return. Of the 20 tax returns for 2015 examined, the IRS made adjustments to all 20 tax returns, with a total tax deficiency of $125,360, or an average tax deficiency of $6,268 per examined return.

156.    The Defendants' customers have also been harmed because they relied on the Defendants and their tax preparation stores to prepare proper tax returns. Instead, customers' tax returns substantially understated their correct tax liabilities after paying unconscionably high fees to have their tax returns prepared. As a result, many customers, who are often low-income taxpayers, now face large income tax debts and may be liable for penalties and interest.

157.    Customers are harmed by the unconscionably high and frequently undisclosed fees tied to anticipated tax refunds. These fees are subtracted from the erroneous refunds that result from the false or fraudulent tax return preparation perpetrated by the Defendants and their employees acting at their direction and with their knowledge and consent. When the IRS conducts audits or examinations of customers and seeks repayment of these erroneous refunds, the customers are liable for the repayment of those refunds. Not only do customers face the hardship associated with repayment of erroneous refunds resulting from the Defendants' greed at others' expense, but customers may also have to repay the portion of the refund that the Defendants subtracted in fees. Customers may also have to pay additional fees to other tax return preparers to file amended tax returns to correct the false or fraudulent tax returns prepared and

39

filed by the Defendants, and their employees acting at their direction and with their knowledge and consent.

158.    The Defendants' misconduct further harms the United States and the public by requiring the IRS to devote some of its resources to detecting her false claims on tax returns and assessing and collecting lost tax revenues from the Defendants' customers. Consequently, identifying and recovering all lost tax revenues resulting from the Defendants' activities may be impossible.

159.    The Defendants' misconduct also harms the United States and the public because the Defendants train tax preparers, who have no previous tax return preparation experience, on how to prepare tax returns that make false or fraudulent claims. These Defendant-trained tax preparers, in turn, often open their own tax preparation stores using the Defendants' investments of the ill-gotten gains that the Defendants received for the preparation of tax returns, or using the income that the preparers received from the Defendants for the preparation of tax returns making false or fraudulent claims. In this manner, the preparation of false or fraudulent tax returns spreads like a wildfire. Tucker, for example, learned how to prepare tax returns at LBS while working for Jean Demesmin (who has since been enjoined), and now she (through Simplified Financial Services) owns and operates as many as 7 tax preparation stores annually (located in 4 states).

160.    The Defendants' conduct also causes intangible harm to honest tax return preparers who unfairly lose business to the Defendants due to their willingness to break the law. Customers often have their returns prepared at the Defendants' tax preparation stores because they promise the maximum refund, and deliver by fabricating claims and deductions on customers' tax returns.

161.     Finally, the Defendants' misconduct harms the public at large by undermining public confidence in the federal tax system and encouraging widespread violations of the internal revenue laws.

162.     The harm to the government and the public will continue, and likely increase, unless the Defendants are enjoined because—given the seriousness and pervasiveness of their illegal conduct—without an injunction, the Defendants are likely to continue preparing false and fraudulent federal income tax returns for customers.  An injunction will serve the public interest because it will put a stop to the Defendants' illegal conduct and the harm that it causes the United States and its citizens.

## Count I
### Injunction under 26 U.S.C. § 7407

163.     Section 7407 of the Internal Revenue Code authorizes a district court to enjoin a tax return preparer from engaging in conduct subject to penalty under 26 U.S.C. § 6694 or § 6695. Additionally, if the court finds that a preparer has continually or repeatedly engaged in such conduct, and the court further finds that a narrower injunction (i.e., prohibiting only that specific enumerated conduct) would not be sufficient to prevent that person's interference with the proper administration of the internal revenue laws, the court may enjoin the person from further acting as a tax return preparer. The prohibited conduct justifying an injunction includes, among other things, the following:

a.      Engaging in conduct subject to penalty under 26 U.S.C. § 6694(a), which penalizes a return preparer who prepares a return or claim for refund that contains an unreasonable position and the return preparer knew (or reasonably should have known) of the position;

b.      Engaging in conduct subject to penalty under 26 U.S.C. § 6694(b), which among other conduct, penalizes a return preparer who recklessly or intentionally disregards IRS rules or regulations;

    c.       Engaging in conduct subject to penalty under 26 U.S.C. § 6695(g), which penalizes a return preparer who fails to comply with the statutory due diligence requirements;

    d.       Guaranteeing the payment of any tax refund or the allowance of any tax credit; or

    e.       Engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

164.    Section 7701(a)(36) of the Internal Revenue Code defines tax return preparer to include not only the individual who physically prepares a tax return for compensation, but also anyone "who employs one or more persons" to prepare tax returns for compensation.

165.    Lakeesha Tucker, as shown above in paragraphs 5 through 162, is a tax return preparer who, individually and through Lakeesha Tucker, LLC and Simplified Financial Services, LLC, has repeatedly and continually prepared or submitted returns or portions of returns (or employed or managed others who prepared or submitted returns or portions of returns) that contain unreasonable positions and substantially understate the liability for tax on the return. Lakeesha Tucker also advises, instructs, directs, and causes her preparers and employees to engage in tax fraud, and to prepare federal income tax returns asserting unreasonable, unrealistic, frivolous and fraudulent positions.  Accordingly, Lakeesha Tucker knew (or should have known) of the unreasonable, unrealistic, frivolous and fraudulent positions.

166.    Lakeesha Tucker, and those acting in concert with her and at her direction, have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694 by preparing federal tax returns that understate her customers' liabilities based on unrealistic, frivolous and reckless positions. Lakeesha Tucker, through the actions described above in paragraphs 5 through 162, also recklessly or intentionally disregards IRS rules or regulations. Tucker, the sole member of Lakeesha Tucker, LLC and Simplified Financial Services, LLC,

participated in and/or knew of the conduct subject to penalty under 26 U.S.C. § 6694 engaged in

by employees of Lakeesha Tucker, LLC and Simplified Financial Services, LLC.  Lakeesha

Tucker, LLC and Simplified Financial Services, LLC, Tucker's wholly-owned entities, failed to

provide reasonable and appropriate procedures to prevent employees from engaging in conduct

subject to penalty under 26 U.S.C. § 6694 and, conversely, encouraged the filing of false tax

returns.

167.    Lakeesha Tucker, and those acting in concert with her and at her direction, have

continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6695. The

Treasury regulations promulgated under 26 U.S.C. § 6695(g) prohibit a return preparer from

claiming the EITC without first conducting proper due diligence and documenting his or her

compliance with the due diligence requirements. *See* 26 C.F.R. § 1.6695-2 (2011).  Not only

does Lakeesha Tucker fail to conduct proper due diligence or comply with the due diligence

requirements, but she also advises, encourages, and causes her preparers and employees to

circumvent the due diligence requirements and to ignore or disregard the information provided

by customers.

168.    Lakeesha Tucker's failure to comply with the due diligence requirements for the

EITC violates Treasury Regulations and her willingness to falsify information to obtain the EITC

for her customers shows a reckless and/or intentional disregard of IRS rules and regulations.

169.    Lakeesha Tucker, and those acting in concert with her and at her direction, have

continually and repeatedly prepared federal income tax returns that claim the EITC for

customers, where Lakeesha Tucker, and those acting in concert with her and at her direction,

have not conducted, let alone documented, the required due diligence procedures.

170.    Lakeesha Tucker fails to comply with 26 U.S.C. § 6695(a), which requires that a tax return preparer provide a copy of the completed tax return to the taxpayer.

171.    Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC also fail to comply with 26 U.S.C. §§ 6695(b) and 6695(c), which require that a tax return preparer and a tax return preparation firm identify the actual paid preparer of the tax return.

172.    Lakeesha Tucker's continual and repeated violations of 26 U.S.C. §§ 6694 and 6695 fall within 26 U.S.C. § 7407(b)(1)(A), and thus are subject to an injunction under 26 U.S.C. § 7407.

173.    Lakeesha Tucker's continual and repeated fraudulent or deceptive conduct in connection with the preparation of tax returns, including in training individuals to prepare false tax returns and in operating a tax preparation business where the preparation of false tax returns flourishes, substantially interferes with the proper administration of the internal revenue laws falls within 26 U.S.C. § 7407(b)(1)(D), and Tucker thus is subject to an injunction under 26 U.S.C. § 7407.

174.    Lakeesha Tucker, and those acting in concert with her and at her direction, have continuously and repeatedly guaranteed refunds to customers and guaranteed the allowance of tax credits, including but not limited to the EITC. This conduct falls within 26 U.S.C. § 7407(b)(1)(C), and Tucker thus is subject to an injunction under 26 U.S.C. § 7407.

175.    If Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC are not enjoined from all tax preparation, they and those acting in concert with them and at their direction are likely to continue to prepare and file false and fraudulent tax returns.

176.    Lakeesha Tucker's, Lakeesha Tucker, LLC's, and Simplified Financial Services, LLC's continual and repeated conduct subject to an injunction under 26 U.S.C. § 7407, including

44

their continual and repeated fabrication of expenses and deductions, is so flagrantly illegal and so egregious that it demonstrates that a narrow injunction prohibiting only specific conduct would be insufficient to prevent Lakeesha Tucker's, Lakeesha Tucker, LLC's, and Simplified Financial Services, LLC's interference with the proper administration of the internal revenue laws. Accordingly, Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC should be permanently barred from acting as federal tax return preparers, and from owning, operating, managing, investing in, controlling, licensing, franchising, or working for a tax return preparation business.

## Count II
## Injunction under 26 U.S.C. § 7408

177.    Section 7408 of the Internal Revenue Code authorizes a district court to enjoin any person from engaging in conduct subject to penalty under either 26 U.S.C. § 6700 or § 6701 if injunctive relief is appropriate to prevent recurrence of such conduct.

178.    Section 6701(a) of the Internal Revenue Code penalizes any person who aids or assists in, procures, or advises with respect to the preparation or presentation of a federal tax return, refund claim, or other document knowing (or having reason to believe) that it will be used in connection with any material matter arising under the internal revenue laws and knowing that if it is so used it will result in an understatement of another person's tax liability. Under 26 U.S.C. § 6701(c)(1), the term "procures" includes "ordering (or otherwise causing) a subordinate to do an act," as well as "knowing of, and not attempting to prevent, participation by a subordinate in an act."

179.    Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC, through the actions detailed above in paragraphs 5 through 162, caused the presentation and preparation of false, fraudulent, and abusive tax returns and other documents. Lakeesha

Tucker prepares, assists, and/or advises with respect to the presentation and preparation of federal tax returns for customers that she knows will understate their correct tax liabilities, because Lakeesha Tucker knowingly prepares, assists, and/or advises with respect to the presentation and preparation of returns claiming bogus expenses and deductions. Lakeesha Tucker procured and assisted the preparation of false and fraudulent tax returns by filing and encouraging the preparation and filing of tax returns she knew were false or fraudulent, and by employing, training, and supervising tax return preparers engaging in tax fraud. Lakeesha Tucker has thus engaged in conduct subject to a penalty under 26 U.S.C. § 6701.

180.    Lakeesha Tucker is likely to continue violating the law absent an injunction. Tax return preparation is Lakeesha Tucker's primary source of revenue. To maximize that income, Lakeesha Tucker prepares, and instructs and directs her preparers and employees to prepare, false or fraudulent returns. That conduct, in turn, gives Lakeesha Tucker a competitive edge over law-abiding preparers. It also provides a means for Lakeesha Tucker to further exploit her customers by charging them unconscionably high fees, while Lakeesha Tucker's false or fraudulent tax return preparation simultaneously and callously exposes her customers to possible civil and criminal liability.

181.    If the Court does not enjoin Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC, they are likely to continue to engage in conduct subject to penalty under 26 U.S.C. § 6701. The preparation of tax returns claiming improper expenses and deductions by Lakeesha Tucker, and those acting in concert with her and at her direction, is widespread over many customers and tax years. Injunctive relief is therefore appropriate under 26 U.S.C. § 7408.

**Count III**
**Injunction under 26 U.S.C. § 7402(a)**
**Necessary to Enforce the Internal Revenue Laws**

182.    Section 7402 of the Internal Revenue Code authorizes a district court to issue

injunctions as may be necessary or appropriate for the enforcement of the internal revenue laws.

183.    Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services,

LLC, through the actions described above in paragraphs 5 through 162, including, but not limited

to, intentionally understating their customers' tax liabilities and charging unconscionable and

undisclosed fees for the preparation of federal tax returns that intentionally understate their

customers' tax liabilities, have engaged in conduct that substantially interferes with the

enforcement of the internal revenue laws.

184.    Unless enjoined, Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified

Financial Services, LLC, and those acting in concert with them and at their direction, are likely

to continue to engage in such improper conduct and interfere with the enforcement of the internal

revenue laws. If Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services,

LLC are not enjoined from engaging in fraudulent and deceptive conduct, the United States will

suffer irreparable injury by providing federal income tax refunds to individuals not entitled to

receive them.

185.    While the United States will suffer irreparable injury if Lakeesha Tucker,

Lakeesha Tucker, LLC, and Simplified Financial Services, LLC are not enjoined, the Defendants

will not be harmed by being compelled to obey the law.

186.    Enjoining Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial

Services, LLC is in the public interest because an injunction, backed by the Court's contempt

powers if needed, will stop the Defendants' illegal conduct and the harm it causes the United

States and the Defendants' customers.

187.    The Court should impose injunctive relief under 26 U.S.C. § 7402(a).

**Count IV**
**Disgorgement under 26 U.S.C. § 7402(a)**
**Necessary to Enforce the Internal Revenue Laws**

188.    Section 7402 of the Internal Revenue Code authorizes a district court to issue

orders, judgments, and decrees as may be necessary or appropriate for the enforcement of the

internal revenue laws.

189.    Lakeesha Tucker's, Lakeesha Tucker, LLC's, and Simplified Financial Services,

LLC's conduct, described above in paragraphs 5 through 162, substantially interferes with the

enforcement of the internal revenue laws and has caused the United States to issue tax refunds to

individuals not entitled to receive them.  Lakeesha Tucker, Lakeesha Tucker, LLC, and

Simplified Financial Services, LLC have unjustly profited at the expense of the United States by

subtracting their exorbitant fees from those refunds.

190.    Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services,

LLC are not entitled to these ill-gotten gains. But for the Defendants' conduct, these bogus

refunds would not have been issued.

191.    The Court should enter an order under 26 U.S.C. § 7402(a) requiring Lakeesha

Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC to disgorge to the

United States the gross receipts (in the form of fees subtracted from customers' tax refunds) that

Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC received for

the preparation of federal tax returns making false and/or fraudulent claims.

WHEREFORE, the United States of America prays for the following:

A.      That the Court find that Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695, continually and repeatedly engaged in other fraudulent or deceptive conduct that substantially interferes with the administration of the tax laws, and that a narrower injunction prohibiting only this specific misconduct would be insufficient;

B.      That the Court, pursuant to 26 U.S.C. § 7407, enter a permanent injunction prohibiting Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC from acting as federal tax return preparers;

C.      That the Court find that Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC have engaged in conduct subject to penalty under 26 U.S.C. § 6701, and that injunctive relief under 26 U.S.C. § 7408 is appropriate to prevent a recurrence of that conduct;

D.      That the Court find that Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC have engaged in conduct that interferes with the enforcement of the internal revenue laws, and that injunctive relief is appropriate to prevent the recurrence of that conduct pursuant to the Court's inherent equity powers and 26 U.S.C. § 7402(a);

E.      That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter a permanent injunction prohibiting Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC, and all those in active concert or participation with them, from:

(1)      acting as federal tax return preparers or requesting, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than themselves;

49

(2)     preparing or assisting in preparing federal tax returns that they know or reasonably should know would result in an understatement of tax liability or the overstatement of federal tax refund(s) as penalized by 26 U.S.C. § 6694;

(3)     owning, operating, managing, working in, investing in, providing capital or loans to, receiving fees or remuneration from, controlling, licensing, consulting with, or franchising a tax return preparation business;

(4)     training, instructing, teaching, and creating or providing cheat sheets, memoranda, directions, instructions, or manuals, pertaining to the preparation of federal tax returns;

(5)     maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

(6)     engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code; and

(7)     engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

F.     That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order requiring Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC to immediately and permanently close all tax return preparation stores that they own directly or through any other entity, and whether those stores do business as Simplified Financial Services or under any other name;

G.     That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order appointing a receiver to sell all of the hard assets, such as computers (after any and all taxpayer information has been removed), electronics, and furniture, for all tax return preparation stores that Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC own directly or through any other entity, and whether those stores do business as Simplified Financial Services or under any other name;

50

H.     That the Court, pursuant to 26 U.S.C. § 7402(a), enter an order prohibiting Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC, directly or through any other entity, from assigning, transferring, or selling any franchise agreement, independent contractor agreement, or employment contract related to Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC, or any other tax return preparation business to which they or any entity under their control is a party;

I.     That the Court, pursuant to 26 U.S.C. § 7402(a), enter an order barring Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC, directly or through any other entity, from: (1) selling to <u>any</u> individual or entity a list of customers, or any other customer information, for whom Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC and any other business or name (including but not limited to Simplified Financial Services) through which they, or those acting at their direction, have at any time since 2012 prepared a tax return; (2) assigning, disseminating, providing, or giving to any current or former franchisee, General Sales Manager, District Sales Manager, manager, tax return preparer, employee, or independent contractor of Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC or any other business or entity through which Lakeesha Tucker prepares tax returns or owns or franchises a tax return preparation business, a list of customers or any other customer information for customers for whom Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC, and any other business or name (including but not limited to Simplified Financial Services) through which Lakeesha Tucker, or those acting at her direction, have at any time since 2012 prepared a tax return; and (3) selling to <u>any</u> individual or entity any proprietary information pertaining to Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC, and any other business or name

51

(including but not limited to Simplified Financial Services) through which Lakeesha Tucker, or those acting at her direction, have at any time since 2012 prepared a tax return;

      J.      That the Court, pursuant to 26 U.S.C. § 7402, enter an order requiring Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC to disgorge to the United States the gross receipts (the amount of which is to be determined by the Court) that Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC received (in the form of fees subtracted from customers' tax refunds) for the preparation of tax returns that make or report grossly incompetent, negligent, reckless, and/or fraudulent claims, deductions, credits, income, expenses, or other information that results in the understatement of taxes, prepared since 2012 by Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC, and at any tax preparation store franchised, owned, or managed by Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC;

      K.      That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order requiring Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC to contact, within 30 days of the Court's order, by United States mail and, if an e-mail address is known, by e-mail, all persons for whom Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC, and their managers, employees, and tax return preparers (including but not limited to those doing business under the name Simplified Financial Services) prepared federal tax returns or claims for a refund from 2012 and continuing through this litigation to inform them of the permanent injunction entered against them, including sending a copy of the order of permanent injunction but not enclosing any other documents or enclosures unless agreed to by counsel for the United States or approved by the Court;

L.      That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an order requiring Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC to produce to counsel for the United States, within 30 days of the Court's order, a list that identifies by name, social security number, address, e-mail address, and telephone number and tax period(s) all persons for whom Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC, and their managers, employees, and tax return preparers (including but not limited to those doing business under the name Simplified Financial Services) prepared federal tax returns or claims for a refund since 2012;

M.      That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an order requiring Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC to produce to counsel for the United States, within 30 days of the Court's order, a list that identifies by name, address, e-mail address, and telephone number all principals, officers, managers, franchisees, employees, and independent contractors of Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC since 2012;

N.      That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an injunction requiring Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC to provide a copy of the Court's order to all principals, officers, managers, franchisees, employees, and independent contractors of Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC within 15 days of the Court's order, and provide to counsel for the United States within 30 days a signed and dated acknowledgment of receipt of the Court's order for each person whom Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC provided a copy of the Court's order;

O.      That the Court retain jurisdiction over Lakeesha Tucker, Lakeesha Tucker, LLC, and Simplified Financial Services, LLC and over this action to enforce any permanent injunction entered against them;

P.      That the United States be entitled to conduct discovery to monitor Lakeesha Tucker's, Lakeesha Tucker, LLC's, and Simplified Financial Services, LLC's compliance with the terms of any permanent injunction entered against them; and

Q.      That the Court grant the United States such other and further relief, including costs, as is just and reasonable.

DATED: September 17, 2018        MARIA CHAPA LOPEZ
                                 United States Attorney

                                 RICHARD E. ZUCKERMAN
                                 Principal Deputy Assistant Attorney General


                                 DANIEL A. APPLEGATE
                                 ALISON A. YEWDELL
                                 JARED S. WIESNER
                                 SAMUEL P. ROBINS
                                 Trial Attorneys, Tax Division
                                 U.S. Department of Justice
                                 P.O. Box 7238, Ben Franklin Station
                                 Washington, D.C.  20044
                                 Telephone: (202) 353-8180
                                 Fax: (202) 514-6770
                                 daniel.a.applegate@usdoj.gov

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| UNITED STATES OF AMERICA | LAKEESHA TUCKER; LAKEESHA TUCKER, LLC; AND SIMPLIFIED FINANCIAL SERVICES, LLC |
| **(b)** County of Residence of First Listed Plaintiff _____ <br> *(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant    Fulton County, GA <br> *(IN U.S. PLAINTIFF CASES ONLY)* <br> NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF <br> THE TRACT OF LAND INVOLVED. |
| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* <br> Daniel Applegate, U.S. Department of Justice, Tax Div., (202) 353-8180 <br> P.O. Box 7238, Ben Franklin Stn., Washington, D.C. 20044 | Attorneys *(If Known)* |

| II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)* | | III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff* |
|---|---|---|

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☒ 1   U.S. Government <br> Plaintiff

☐ 3   Federal Question <br> *(U.S. Government Not a Party)*

☐ 2   U.S. Government <br> Defendant

☐ 4   Diversity <br> *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* <br> *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place <br> of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place <br> of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a <br> Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                      Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment <br> & Enforcement of Judgment <br> ☐ 151 Medicare Act <br> ☐ 152 Recovery of Defaulted <br> Student Loans <br> (Excludes Veterans) <br> ☐ 153 Recovery of Overpayment <br> of Veteran's Benefits <br> ☐ 160 Stockholders' Suits <br> ☐ 190 Other Contract <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | **PERSONAL INJURY** <br> ☐ 310 Airplane <br> ☐ 315 Airplane Product <br> Liability <br> ☐ 320 Assault, Libel & <br> Slander <br> ☐ 330 Federal Employers' <br> Liability <br> ☐ 340 Marine <br> ☐ 345 Marine Product <br> Liability <br> ☐ 350 Motor Vehicle <br> ☐ 355 Motor Vehicle <br> Product Liability <br> ☐ 360 Other Personal <br> Injury <br> ☐ 362 Personal Injury - <br> Medical Malpractice | **PERSONAL INJURY** <br> ☐ 365 Personal Injury - <br> Product Liability <br> ☐ 367 Health Care/ <br> Pharmaceutical <br> Personal Injury <br> Product Liability <br> ☐ 368 Asbestos Personal <br> Injury Product <br> Liability <br> **PERSONAL PROPERTY** <br> ☐ 370 Other Fraud <br> ☐ 371 Truth in Lending <br> ☐ 380 Other Personal <br> Property Damage <br> ☐ 385 Property Damage <br> Product Liability | ☐ 625 Drug Related Seizure <br> of Property 21 USC 881 <br> ☐ 690 Other | ☐ 422 Appeal 28 USC 158 <br> ☐ 423 Withdrawal <br> 28 USC 157 <br> **PROPERTY RIGHTS** <br> ☐ 820 Copyrights <br> ☐ 830 Patent <br> ☐ 835 Patent - Abbreviated <br> New Drug Application <br> ☐ 840 Trademark | ☐ 375 False Claims Act <br> ☐ 376 Qui Tam (31 USC <br> 3729(a)) <br> ☐ 400 State Reapportionment <br> ☐ 410 Antitrust <br> ☐ 430 Banks and Banking <br> ☐ 450 Commerce <br> ☐ 460 Deportation <br> ☐ 470 Racketeer Influenced and <br> Corrupt Organizations <br> ☐ 480 Consumer Credit <br> ☐ 490 Cable/Sat TV |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** <br> ☐ 710 Fair Labor Standards <br> Act <br> ☐ 720 Labor/Management <br> Relations <br> ☐ 740 Railway Labor Act <br> ☐ 751 Family and Medical <br> Leave Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Employee Retirement <br> Income Security Act | **SOCIAL SECURITY** <br> ☐ 861 HIA (1395ff) <br> ☐ 862 Black Lung (923) <br> ☐ 863 DIWC/DIWW (405(g)) <br> ☐ 864 SSID Title XVI <br> ☐ 865 RSI (405(g)) | ☐ 850 Securities/Commodities/ <br> Exchange <br> ☐ 890 Other Statutory Actions <br> ☐ 891 Agricultural Acts <br> ☐ 893 Environmental Matters <br> ☐ 895 Freedom of Information <br> Act |
| ☐ 210 Land Condemnation <br> ☐ 220 Foreclosure <br> ☐ 230 Rent Lease & Ejectment <br> ☐ 240 Torts to Land <br> ☐ 245 Tort Product Liability <br> ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights <br> ☐ 441 Voting <br> ☐ 442 Employment <br> ☐ 443 Housing/ <br> Accommodations <br> ☐ 445 Amer. w/Disabilities - <br> Employment <br> ☐ 446 Amer. w/Disabilities - <br> Other <br> ☐ 448 Education | **Habeas Corpus:** <br> ☐ 463 Alien Detainee <br> ☐ 510 Motions to Vacate <br> Sentence <br> ☐ 530 General <br> ☐ 535 Death Penalty <br> **Other:** <br> ☐ 540 Mandamus & Other <br> ☐ 550 Civil Rights <br> ☐ 555 Prison Condition <br> ☐ 560 Civil Detainee - <br> Conditions of <br> Confinement | **IMMIGRATION** <br> ☐ 462 Naturalization Application <br> ☐ 465 Other Immigration <br> Actions | **FEDERAL TAX SUITS** <br> ☒ 870 Taxes (U.S. Plaintiff <br> or Defendant) <br> ☐ 871 IRS—Third Party <br> 26 USC 7609 | ☐ 896 Arbitration <br> ☐ 899 Administrative Procedure <br> Act/Review or Appeal of <br> Agency Decision <br> ☐ 950 Constitutionality of <br> State Statutes |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1   Original <br> Proceeding    ☐ 2   Removed from <br> State Court    ☐ 3   Remanded from <br> Appellate Court    ☐ 4   Reinstated or <br> Reopened    ☐ 5   Transferred from <br> Another District <br> *(specify)*    ☐ 6   Multidistrict <br> Litigation - <br> Transfer    ☐ 8   Multidistrict <br> Litigation - <br> Direct File

| **VI. CAUSE OF ACTION** | Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: <br> 26 U.S.C. sections 7407, 7408, and 7402(a) <br> Brief description of cause: <br> Suit for injunction barring defendants from preparing tax returns and an order to disgorge ill-gotten gains |
|---|---|

| **VII. REQUESTED IN** <br> **COMPLAINT:** | ☐ CHECK IF THIS IS A **CLASS ACTION** <br> UNDER RULE 23, F.R.Cv.P. | **DEMAND $** | CHECK YES only if demanded in complaint: <br> **JURY DEMAND:**    ☐ Yes    ☒ No |
|---|---|---|---|

**VIII. RELATED CASE(S)** <br> **IF ANY**          *(See instructions):*          JUDGE _____          DOCKET NUMBER _____

| DATE <br> 09/17/2018 | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____